Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000470
18-NOV-2019
09:17 AM

NO. CAAP-16-0000470

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
GABRIEL R.J. ALEDO, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 15-1-0574)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the "Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Dismiss Indictment" (**FOFs/COLs/Order**) entered on May 18, 2016, by the Circuit Court of the First Circuit (**Circuit Court**).[1]  Defendant-Appellee Gabriel R.J. Aledo (**Aledo**) was charged via an Indictment with Attempted Sexual Assault in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) § 705-500 (2014) and HRS §707-731(1)(a) (2014)[2] (**Count I**) and Sexual Assault in the Fourth

---

[1]  The Honorable Dean E. Ochiai presided.

[2]  HRS § 705-500 provides, in relevant part:

§705-500  **Criminal attempt.**  (1) A person is guilty of an attempt to commit a crime if the person:
(a)    Intentionally engages in conduct which would
(continued...)

Degree, in violation of HRS § 707-733(1)(a) (2014)[3] (**Count II**).

Counts I and II of the Indictment stem from an alleged sexual assault of the Complaining Witness (**CW**) by Aledo. The Indictment states:

> Count 1: On or about August 11, 2014, to and including August 12, 2014, in the City and County of Honolulu, State of Hawai'i, GABRIEL R.J. ALEDO, did intentionally engage in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of Sexual Assault in the Second Degree against [the CW], by attempting to insert his penis into her anal opening, thereby committing the offense of Attempted Sexual Assault in the Second Degree, in violation of Sections 705-500 and 707-731(1)(a) of the Hawai'i Revised Statutes. A person commits the offense of Sexual Assault in the Second Degree, in violation of Section 707-731(1)(a) of the Hawai'i Revised Statutes if he knowingly subjects another person to an act of sexual penetration by compulsion.

> Count 2: On or about August 11, 2014, to and including August 12, 2014, in the City and County of Honolulu, State of Hawaii, GABRIEL R.J. ALEDO, who was not married to [the CW], and knew that he was not married to [the CW], did

---

(...continued)

> constitute the crime if the attendant circumstances were as the person believes them to be; or
> (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

HRS § 707-731(1)(a) provides:

> **§707-731 Sexual assault in the second degree.** (1) A person commits the offense of sexual assault in the second degree if:
> (a) The person knowingly subjects another person to an act of sexual penetration by compulsion[.]

(Emphasis added).

[3] At the time of the offense, HRS § 707-733(1)(a) provided:

> **§707-733 Sexual assault in the fourth degree.** (1) A person commits the offense of sexual assault in the fourth degree if:
> (a) The person knowingly subjects another person, to sexual contact by compulsion or causes another person, to have sexual contact with the actor by compulsion[.]

(Emphasis added).

> knowingly subject [the CW] to sexual contact by <u>compulsion</u> by placing his hand on her buttock, thereby committing the offense of Sexual Assault in the Fourth Degree in violation of Section 707-733(1)(a) of the Hawaii Revised Statutes. Pursuant to Section 707-700 of the Hawaii Revised Statutes, "married" includes persons legally married, and a male and female living together as husband and wife regardless of their legal status, but does not include spouses living apart.

(Emphasis added).

On April 20, 2016, before trial or any other relevant filings by the State, Aledo filed a "Motion to Dismiss Indictment" (**Motion to Dismiss**) arguing that the "charge in this case is fatally defective for failing to define the term 'compulsion,' in violation of Aledo's constitutional due process rights." Aledo's Motion to Dismiss also argued that the commonly understood definition of "compulsion" does not comport with the definition set forth in HRS § 707-700 (2014).[4]

Also on April 20, 2016, Aledo filed a "Motion to Suppress Statements" (**Motion to Suppress**) requesting that the court suppress and preclude from use at trial certain statements "obtained as a result of an unlawful warrantless arrest[.]"

On May 9, 2016, the Circuit Court held a hearing on Aledo's Motion to Dismiss and Motion to Suppress. At the hearing, the Circuit Court noted the "vagueness of the charge" stemming from the disjunctive definition of "compulsion" in HRS § 707-700 and orally granted the Motion to Dismiss. Consequently, the Circuit Court did not address Aledo's Motion to Suppress.

---

[4] HRS § 707-700 provides, in relevant part:

§707-700 **Definitions of terms in this chapter.**

. . . .

"Compulsion" means absence of consent, <u>or</u> a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss.

(Emphasis added).

3

On May 18, 2016, the Circuit Court entered its FOFs/COLs/Order, from which the State timely appealed.

On appeal, the State asserts that the Circuit Court erred in granting Aledo's Motion to Dismiss, specifically challenging the three COLs entered:

> 1. The commonly understood definition of "compulsion" does not comport with the definition set forth in HRS § 707-700. Therefore, the definition of that term in HRS § 707-700 is neither "unmistakable" nor "readily comprehensible to persons of common understanding."
>
> 2. Furthermore, the definition set forth in HRS § 707-700 allows the State to proceed [sic] different means of compulsion -- either an "absence of consent" or "a threat, express or implied." This fails to put the Defendant on notice of what he is being charged with.
>
> 3. Due to the failure of the charges in the Indictment to define "compulsion," or to elect which means of compulsion the Defendant is being charged with, Mr. Aledo had no notice as to the nature of the charges against him. Hence, the charges in the Indictment are fatally defective pursuant to State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant legal authorities, we affirm.

**(1) Sufficiency of the Charge.** The State argues that the Circuit Court erred in granting the Motion to Dismiss due to the State's failure to define the term "compulsion" as used in both counts of the Indictment, because the State contends that the statutory definition of "compulsion" comports with the commonly understood meaning of the term.

"Whether an indictment or complaint sets forth all the essential elements of a charged offense is a question of law, which we review under the de novo, or right/wrong, standard." State v. Merino, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) (internal brackets, quotation marks, and ellipses omitted) (quoting State v. Wells, 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995)).

In Wheeler, the Hawai'i Supreme Court held that an oral charge for Operating a Vehicle Under the Influence of an

4

Intoxicant was insufficient because it failed to allege that the conduct occurred on a "public way, street, road, or highway[,]" which was an attendant circumstance given the definition of "operate" under the applicable statutes. 121 Hawai'i at 391-93, 219 P.3d at 1178-80. The Supreme Court reiterated the principle that:

> the sufficiency of the charging instrument is measured, *inter alia*, by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]" "A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process."

Id. at 391, 219 P.3d at 1178 (footnote and internal citations omitted) (quoting Merino, 81 Hawai'i at 212, 915 P.2d at 686).

Here, for Count I and II of the Indictment to be sufficient, those counts needed to allege the elements of the offenses intended to be charged, and sufficiently apprise Aledo of what he must be prepared to defend against.

Both HRS §§ 707-731(1)(a) and 707-733(1)(a) require "compulsion," which is defined in HRS § 707-700 as meaning the "absence of consent, <u>or</u> a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss." (Emphasis added). The parties do not dispute that "compulsion" is an essential element of both statutes. See also HRS §§ 702-205 (2014) (providing, *inter alia*, that the elements of an offense include attendant circumstances which negative a defense); 702-233 (2014) ("In any prosecution, the victim's consent to the conduct alleged, or to the result thereof, is a defense if the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense."); 702-235(4) (2014) (providing that consent does not constitute a defense if it is "induced by force, duress or deception.").

We disagree with the State's arguments on appeal, based primarily on State v. Mita, 124 Hawai'i 385, 245 P.3d 458 (2010),

5

that the statutory definition of the term "compulsion" comports with the commonly understood meaning of the term. In its Opening Brief, the State cites the *Webster's New World Dictionary* (3d ed. 1988) definition of the word "compulsion" as "a compelling or being compelled; coercion; constraint" and "that which compels; driving force[.]" Id. at 287. The State further cites the same source for the definition of "compel" as "to force or constrain, as to do something" or "to get or bring about by force." Id. at 284.[5]

We further examine the definition of the words "compulsion" and "compel" as provided by *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). They are:

> com•pul•sion[.] . . . 1 a : an act of compelling : the state of being compelled b : a force that compels 2 : an irresistible persistent impulse to perform an act (as excessive hand washing)[.]

and

> com•pel[]. . . . 1 : to drive or urge forcefully or irresistibly <hunger *compelled* him to eat> 2 : to cause to do or occur by overwhelming pressure <public opinion *compelled* her to sign the bill> 3 *archaic* : to drive together *syn* see FORCE[.]

Id. at 253, 256.

None of these dictionary definitions rise to the level of specificity of the definition of "compulsion" in HRS § 707-700, particularly with regards to "a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss." We therefore conclude that the statutory definition of the term "compulsion" departs from the commonly understood definitions of the term to such an extent that charging Aledo in the language of the statutes failed to provide him with fair notice of the charges.

Next, in determining whether Aledo's right to be informed of the nature and cause of the charge against him was

---

[5] The State's Opening Brief continues by quoting the definitions of "force," "coercion," and "constraint." However, none of these definitions track or are consistent with the definition of "compulsion" under HRS § 707-700.

violated, we must look at the information supplied to him at the time he asserted the charge was defective. See State v. Hitchcock, 123 Hawaiʻi 369, 379, 235 P.3d 365, 375 (2010). In the instant case, Aledo filed both his Motion to Dismiss and Motion to Suppress on April 20, 2016, after the Indictment was filed but before any other relevant filings by the State.

Included with the Motion to Suppress is a Declaration of Counsel prepared by Jeffrey A. Hawk (**Hawk**), defendant's counsel at the time. In his Declaration, Hawk states that:

> [d]uring the interview on February 11, 2015, the [CW] detailed the alleged incident from August 12, 2014, from which the two counts are charged. The [CW] accused Defendant of holding her down while masturbating on her and attempting to place his penis into her anus[.]

The State argues on appeal that, in light of Hawk's Declaration, "[Aledo] was thus aware that the alleged 'compulsion' was based on the absence of consent, and there is no mention that the sexual contact or attempted sexual penetration was due to an express or implied threat." Of note, however, the record does not reflect that the State would limit the charge based on the CW's statement or that further facts could not be developed in the case. Thus, based on our *de novo* review, we cannot say that Aledo was properly informed of the nature and cause of the charges against him.

**(2) Other Arguments.** The State also argues that the Circuit Court erred in granting Aledo's Motion to Dismiss because it incorrectly determined that the statutory definition of "compulsion" described different means of compulsion. Notwithstanding the State's arguments, we conclude that the Circuit Court correctly interpreted the definition of "compulsion" given the plain meaning of the definition in HRS § 707-700.

Finally, the State argues that if dismissal of the Indictment without prejudice is the appropriate remedy for

7

the charging error here, then HRS § 806-47 (2014)[6] providing for a bill of particulars is consequently rendered insignificant, superfluous, and void. The State failed to raise this argument in either its memorandum in opposition to the Motion to Dismiss or at the hearing, and thus it is waived. See Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) (citations omitted)).

In any event, we reject the State's contention. In State v. Israel, 78 Hawai'i 66, 72, 890 P.2d 303, 309 (2002), the Hawai'i Supreme Court reaffirmed the rule that "all of the information supplied to a defendant must be considered in determining whether the defendant's right to be informed of the nature and cause of the accusation was violated" and that "information provided in a bill of particulars or obtained via discovery should be considered." Thus, HRS § 806-47 is not superfluous or rendered void. In the instant case, no bill of particulars was requested or provided.

Therefore, IT IS HEREBY ORDERED that the "Findings of Fact, Conclusions of Law, and Order Granting Defendant's

---

[6] HRS § 806-47 provides:

§806-47 **Bill of particulars.** If the court is of the opinion that the accused in any criminal case has been actually misled and prejudiced in the accused's defense upon the merits of any defect, imperfection, or omission in the indictment, insufficient to warrant the quashing of the indictment, or by any variance, not fatal, between the allegations and the proof, the prosecuting officer shall, when so ordered by the court, acting upon its own motion or upon motion of the prosecution or defendant, file in court and serve upon the defendant, upon such terms as the court imposes, a bill of particulars of the matters in regard to which the court finds that the defendant should be informed.

In determining whether further information, and if so what information, is desirable for the defense of the accused upon the merits of the case, the court shall consider the whole record of the case and the entire course of the proceedings against the accused.

Motion to Dismiss Indictment" entered on May 18, 2016, by the Circuit Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawaiʻi, November 18, 2019.

Chief Judge

On the briefs:

Brandon H. Ito,
Deputy Prosecuting
Attorney,
City and County of
Honolulu,
for Plaintiff-Appellant.

Jeffrey A. Hawk,
for Defendant-Appellee.

Associate Judge

Associate Judge